DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Hillsboro Municipal Court which denied the motion to vacate and set aside default judgment filed by Defendant-Appellant Frank Bomholt and Sons, Inc. Appellant argues that the trial court erred in denying its motion because it was never properly served with a copy of the complaint filed by Plaintiff-Appellee Everett Jones III. We find appellant's argument to be without merit and affirm the well-reasoned judgment of the trial court.
 I. The Proceedings Below {¶ 2} Defendant-Appellant Frank Bomholt and Sons, Inc. (FBS) is in the business of selling new and used farm equipment. It has multiple locations. Relevant to this appeal are two of those locations: its primary location in Maria Stein, Ohio; and a location in Hillsboro, Ohio.
 {¶ 3} FBS is a company incorporated under the laws of Ohio. The principals of the company relevant to this appeal are two men: Doug Bomholt, the manager of the corporation; and Louis Knapke, the former president of the corporation who died prior to the initiation of this case.
 {¶ 4} In November 1998, Plaintiff-Appellee Everett Jones III filed a lawsuit naming two defendants: (1) FBS, and (2) Defendant Dale Kendall, who Jones alleged was an agent of the corporation. Jones asserted in his complaint that he had contracted with Kendall, who he believed was a representative of the Hillsboro branch of FBS, to sell a piece of his farm equipment in return for the sum of $6,000. Jones alleged that FBS sold the equipment but had never paid him the promised $6,000.
 {¶ 5} In October 1999, the Hillsboro Municipal Court issued a default judgment against FBS because the company had failed to defend its case. The trial court ordered FBS to pay Jones $6,000 plus interest and costs.
 {¶ 6} In March 2001, FBS filed a motion to vacate and set aside default judgment, asserting that the default judgment was void due to defective service of process. The trial court granted FBS a hearing on this motion.
 {¶ 7} At this hearing, it was determined that the bailiff for the trial court served Kendall with service of process that was intended for FBS. The bailiff believed that Kendall was an agent of the corporation, and, thus, served him notice of the complaint that was intended for FBS.
 {¶ 8} Jones maintained that the bailiff's belief was correct. Jones argued that Knapke hired Kendall to run the Hillsboro site and to be the sales representative at that location. Thus, according to Jones, Kendall was an agent of FBS who had accepted service of process on behalf of the company.
 {¶ 9} However, FBS argued that Kendall was not an agent of the company, and, therefore, service of process was never properly effectuated. We reserve a detailed discussion of the specific evidence and arguments presented at this hearing for our legal analysis below.
 {¶ 10} Shortly thereafter, the trial court issued an entry denying FBS's motion and finding that service of process was properly perfected on the corporation. Thus, the trial court upheld its earlier decision granting default judgment in favor of Jones.
 II. The Appeal {¶ 11} FBS timely filed an appeal with this Court, assigning the following error for our review: "The trial court erred when it found that Plaintiff Everett Meggs Jones III perfected service upon the defendant Frank Bomholt Sons, Inc. by serving a complaint upon Dale Kendall on November 30, 1998."
 {¶ 12} An appellate court reviews a trial court's denial of a motion to vacate and set aside default judgment under the abuse-of-discretion standard.[1] See, generally, State ex rel. Richardv. Seidner (1996), 76 Ohio St.3d 149, 666 N.E.2d 1134. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."State v. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443, 447, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144,148.
A. Serving an Ohio Corporation
 {¶ 13} Due process requires that service of process be accomplished in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action," and to give them an opportunity to appear. Samson Sales, Inc.v. Honeywell, Inc. (1981), 66 Ohio St.2d 290, 293, 421 N.E.2d 522, 524, citing Mullane v. Cent. Hanover Bank Trust Co. (1950), 339 U.S. 306,314, 70 S.Ct. 652, 657; see, also, In re Foreclosure of Liens (1980),62 Ohio St.2d 333, 405 N.E.2d 1030, syllabus. In Ohio, this means that service must be made in accordance with the Ohio Rules of Civil Procedure. If there is not compliance with these rules, then service is improper and a valid judgment cannot be rendered against the defendant. See Household Retail Services, Inc. v. Colon (July 5, 1991), Erie App. No. E-90-66; accord Westmoreland v. Valley Homes Mut. Hous. Corp. (1975), 42 Ohio St.2d 291, 328 N.E.2d 406 (explaining that a default judgment rendered by a court without personal jurisdiction over the parties is void).
 {¶ 14} Here, Civ.R. 4.2(F) governs service of process upon FBS. In pertinent part, it provides the following: "Service of process * * * shall be made * * * [u]pon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation by certified mail at any of its usual places of business; or by serving an officer or a managing orgeneral agent of the corporation * * *." (Emphasis added.) Civ.R. 4.2(F).
B. Agency
 {¶ 15} The key issue in this case is whether Kendall was an agent of FBS, as contemplated by Civ.R. 4.2(F). For the following reasons, we find that he was.
 {¶ 16} Generally, an agency relationship is a contractual relationship created by an express or implied agreement between the parties. See NYE v. Kemp (1994), 97 Ohio App.3d 130, 646 N.E.2d 262;AmeriFirst Sav. Bank v. Krug (1999), 136 Ohio App.3d 468, 484,737 N.E.2d 68, 79; Johnson v. Tansky Sawmill Toyota, Inc. (1994),95 Ohio App.3d 164, 642 N.E.2d 9. "The test of whether a person is the agent of another is the right of control of one over the other." Rudy v.Bodenmiller (Dec. 11, 1990), Miami App. No. 89CA54. And, if it is determined that an agency relationship exists, "it will be an agency whether the parties understand the exact nature of the relation or not * * *." Id., citing 3 Ohio Jurisprudence 3d, Agency, Sections 18, 19.
 {¶ 17} The question of whether an agency relationship exists is one of fact. See Heritage Oldsmobile Cadillac v. Fifth Third Bank (Oct. 10, 1990), Hamilton App. No. C-890370; accord Stratso v. Song (1984),17 Ohio App.3d 39, 477 N.E.2d 1176; Agosto v. Leisure World Travel, Inc. (1973), 36 Ohio App.2d 213, 304 N.E.2d 910.
 {¶ 18} The Supreme Court of Ohio has enumerated several factors to aid a trier of fact in determining whether a person has the right of control over another. These factors include: whether the individual's performance was in the course of the principal's business rather than in some ancillary capacity; whether the individual received compensation from the principal; whether the principal supplied the place of work in the course of the relationship; who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools, and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts. See Hanson v. Kynast (1986),24 Ohio St.3d 171, 494 N.E.2d 1091; Bostic v. Connor (1988),37 Ohio St.3d 144, 524 N.E.2d 881.
C. Kendall Was an Agent of FBS
 {¶ 19} Ample evidence was presented at the hearing on FBS's motion to support the trial court's finding that Kendall was the agent of FBS. Much of this evidence goes toward one or more of the aforementioned elements espoused by the Supreme Court of Ohio.
 {¶ 20} Kendall testified that he was hired by Knapke in 1992 to be the Hillsboro sales representative for FBS. He stated that he served in this capacity until 2000. He explained that his job responsibilities entailed showing and selling farm equipment, as well as handling the credit applications for customers.
 {¶ 21} Kendall testified that he was at the Hillsboro FBS lot every day and that he had a key to the building situated on the lot.
 {¶ 22} Kendall also explained that he telephoned Knapke regularly throughout each day. And, if Knapke was unavailable, he stated that he would deal with Bomholt.
 {¶ 23} Kendall testified, and FBS conceded, that Kendall's home telephone number was printed on the FBS sign displayed on the lot in Hillsboro.
 {¶ 24} Kendall also stated that he regularly received a commission from FBS for the equipment he sold for FBS. In addition, he testified that he received W-2 forms from FBS and that he reported his income from FBS on his federal and state income-tax returns.
 {¶ 25} Oscar Hamilton, a farm-machinery mechanic who worked on the lot, testified that he believed Kendall worked for FBS. Hamilton also testified that he regularly received instructions from Kendall regarding which equipment to work on and when.
 {¶ 26} Everett Jones, a recurring customer of FBS, testified that he also believed that Kendall was an employee of FBS. He based this conclusion on his interaction with Kendall over the years in purchasing equipment from FBS.
 {¶ 27} Based on this evidence, the trial court found that Kendall was the agent of FBS at the time he received service of process on behalf of the company. As Kendall testified that he notified Knapke of being served, and, further, that he mailed a copy of the notice to the FBS office in Maria Stein, the trial court found that service was in fact perfected.
D. FBS's Response
 {¶ 28} FBS responded to the trial court's reliance on the foregoing evidence by waging a three-fold argument. First, it asks us to disregard the trial court's finding that the evidence presented by Kendall was more credible than that introduced by FBS.
 {¶ 29} As the Supreme Court of Ohio explained in Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273, "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view thewitnesses and observe their demeanor, gestures and voice inflections, anduse these observations in weighing the credibility of the profferedtestimony." (Emphasis added.) Id. at 80, 461 N.E.2d at 1275.
 {¶ 30} We simply decline FBS's invitation to second-guess the trial court's capable evaluation of the evidence in this case.
 {¶ 31} Second, FBS argues that Kendall was not an agent because, at the time of trial, Kendall "had been indicted and has since pled guilty to theft offenses arising out of the `assistance' he rendered to [FBS]."
 {¶ 32} This argument is wholly irrelevant to the trial court's task of determining whether FBS had a right of control over Kendall. SeeRudy, supra. In fact, if this argument does anything, it cuts against FBS: FBS maintains that Kendall personally profited from a position of trust in which the corporation placed him. Instead of referring to this relationship in terms of agency, FBS used the awkward descriptor "assistance." We see no need to address this argument further.
 {¶ 33} Third, FBS presents us with the open-ended argument that Kendall's dealings were solely with Knapke, and "Knapke died prior to the existence of this case ever being discovered by [FBS]."
 {¶ 34} This argument is nothing more than another request for us to second-guess the factual findings of the trial court. FBS maintains that "[c]onveniently for Kendall, Knapke could not confirm or deny the truth of this allegation because he was deceased when the matter came on for hearing upon [FBS's] motion to [v]acate."
 {¶ 35} We note that Kendall is not a party to this appeal, so we are unclear as to the meaning of FBS's allegation that Knapke's death operated to Kendall's benefit. We presume that FBS meant to say that Jones was somehow "convenienced" by Knapke's death. However, this is equally puzzling. Here, FBS's argument is that, because Knapke is deceased and he supposedly dealt with Kendall then any agreement between those two men cannot be applied to the corporation. While this defies the clear and ordinary rules of basic agency law, we are struck by the irony in FBS's argument: FBS is attempting to capitalize on Knapke's unavailability while, at the same time, accusing Jones of doing the same. Moreover, the trial court simply did not find FBS's argument that Kendall was not agent of the corporation to be convincing.
 {¶ 36} As we have found ample evidence to support the trial court's finding that there existed an agency relationship between Kendall and FBS, we cannot say that the trial court abused its discretion in this regard.
III. Conclusion
 {¶ 37} For the foregoing reasons, we overrule FBS's assignment of error and affirm the judgment of the Hillsboro Municipal Court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the HILLSBORO MUNICIPAL COURT to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only with Opinion.
Kline, J.: Concurs in Judgment Only.
[1] We note that "a motion to vacate judgment for want of personal jurisdiction constitutes a direct attack upon the judgment and, as such, need not satisfy the requirements of Civ.R. 60(B)." Schnippel Constr.,Inc. v. Kreps, Shelby App. No. 17-01-16, 2002-Ohio-668; accord LeroyJenkins Evangelistic Assn., Inc. v. Equities Diversified, Inc. (1989),64 Ohio App.3d 89, 580 N.E.2d 812; see, generally, GTE Automatic Elec.v. ARC Industries (1976), 47 Ohio St.2d 146, 351 N.E.2d 113 (explaining the analysis to be applied in reviewing a Civ.R. 60(B) challenge).